UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                            :        CHAPTER 7
Morgan & Finnegan, LLP,                           :
    Debtor.                   :
                                                  :        Case No. 09-11203 (RDD)
----------------------------------------------------------X

**STIPULATION AND ORDER, PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363: (I) GRANTING JPMORGAN CHASE BANK, N.A., RELIEF FROM THE AUTOMATIC STAY; (II) AUTHORIZING THE CHAPTER 7 TRUSTEE TO UTILIZE CASH COLLATERAL OF JPMORGAN CHASE BANK, N.A., AND (III) GRANTING ADEQUATE PROTECTION TO <u>JPMORGAN CHASE BANK, N.A.</u>**

WHEREAS:

1. On or about March 17, 2009 (the "Petition Date"), Morgan & Finnegan, LLP ("M&F" or the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2. On or about March 18, 2009, Roy Babitt was appointed interim Chapter 7 trustee (the "Trustee") for the Debtor.

3. In or about January 2009, the partners of M&F voted to dissolve and cease business operations.

4. The Debtor has ceased all ongoing business operations and the Trustee has been charged with collecting and administering property of the estate for the benefit of creditors.

5. Pursuant to a lease dated as of December 23, 2003 (the "Lease"), M&F leased, for a term of 20 years, certain premises (the "Premises"), which consisted of the entire 20th and 21st floors at Three World Financial Center New York, New York 10285, from BFP Tower C Co., LLC (the "Landlord").

6. Pursuant to the Lease, M&F was required to obtain an irrevocable letter of credit in favor of the Landlord in the amount of $4,914,360.00 to be provided as security for M&F's performance under the Lease.

7. In or about January 2008, M&F obtained a commitment from JPMorgan Bank, N.A. ("JPMorgan") for a credit facility (the "Facility") which included an irrevocable standby letter of credit up to the amount of $4,967,079 (the "Letter of Credit") for the purpose of providing the security required under the Lease.

8. Pursuant to certain Application and Agreement for Irrevocable Standby Letter of Credit, dated March 13, 2008 (the "Letter of Credit Agreement"), on March 18, 2008, JPMorgan issued letter of credit No. TTTS-252812 in the amount of $4,910,360.00 for the benefit of the Landlord.

9. To secure the obligations under the Facility, including the Letter of Credit, pursuant to a security agreement, dated as of February 12, 2008 (the "Security Agreement") and the Letter of Credit Agreement (the Letter of Credit Agreement and the Security Agreement, together the "Existing Agreements"), M&F granted to JPMorgan a first priority continuing security interest in substantially all of the assets of M&F as described in the Existing Agreements (the "Collateral").

10. Pursuant to the Existing Agreements, JPMorgan was granted:

> a continuing security interest in, pledges and assigns to the Bank all of the "Collateral" (as hereinafter defined) owned by the Debtor, all of the collateral in which the Debtor has rights or power to transfer rights and all Collateral in which the Debtor later acquires ownership, other rights or rights or power to transfer rights to secure the payment and performance of the Liabilities.

11. Collateral is defined in the Existing Agreements to include:

> Accounts; Chattel Paper; Deposit Accounts and other payment obligations of a financial institution (including the Bank): Documents; Equipment; General Intangibles; Instruments; Inventory; Investment Property; and Letter of Credit Rights.
>
> . . ."Collateral" means all of the Debtor's property whether owned individually or jointly with others of the types indicated above and defined below, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, including but not limited to any items listed on any schedule or list attached hereto. In addition, the term "Collateral" includes all "proceeds," "products" and "supporting obligations" (as such terms are defined in the "UCC," meaning the Uniform Commercial Code of New York, as in effect from time to time) of the Collateral indicated above.

12. On or about March 24, 2008, JPMorgan caused a UCC-1 financing statement to be filed against M&F with the New York Secretary of State as File No.200803245308708.

13. On or about February 3, 2009, the Landlord presented a sight draft (the "Sight Draft") to JPMorgan to draw the full amount of the Letter of Credit, based upon M&F's failure to meet its obligations under the Lease.

14. By letter dated February 6, 2009 (the "Default Letter"), JPMorgan provided written notice of default to M&F under the terms of the Letter of Credit Agreement and the Security Agreement and demanded immediate payment of all amount due under the Letter of Credit.

15. JPMorgan determined that the Sight Draft was a conforming demand for payment under the Letter of Credit and on February 11, 2009, paid the sum of $4,910,360.00 to the Landlord.

16. Pursuant to a demand letter dated February 11, 2009 (the "Demand Letter"), JPMorgan demanded payment from M&F in the amount of $4,910,360.00 at or before 3:00 p.m. E.S.T. on February 12, 2009.

17. M&F failed to pay to JPMorgan the balance due under the Letter of Credit, including without limitation the principal sum of $4,910,360.00, plus interest costs and fees, including attorneys' fees.

18. Following M&F's failure to make payment as demanded, between February 12, 2009 and the Petition Date, JPMorgan exercised its right of set off in the aggregate amount of $1,689,968.69 (the "Set Off") with respect to funds in accounts maintained by M&F at JPMorgan.

19. As of the Petition Date, the principal amount due and owing to JPMorgan in connection with the Letter of Credit was $3,220,391.31, plus such additional fees, costs (including attorneys' fees), expenses and interest as may have accrued under the Letter of Credit Agreement.

20. Pursuant to a summons and complaint and motion for a temporary restraining order filed in the New York State Supreme Court for the County of New York (the "State Court") on February 27, 2009, JPMorgan demanded the following relief of M&F:

    a. Monetary damages for amounts due under and in connection with the Letter of Credit.

    b. A preliminary injunction and temporary restraining order pursuant to N.Y.C.P.L.R. §§ 6301, 6311 and 6313 directing M&F, to:

        i. provide to JPMorgan, or a receiver appointed by the State Court, copies of all invoices for accounts receivable billed as of January 31, 2009, including all client contact information;

    ii. provide to JPMorgan, or a receiver appointed by the State Court, invoices, billing information, and all client contact information for all matters not billed as of January 31, 2009;

    iii. provide to JPMorgan, or a receiver appointed by the State Court, client and matter information for matters on which M&F was engaged prior to February 1, 2009 and which were transferred to Locke Lord Bissell and Liddell ("Locke Lord");

    iv. permit and authorize JPMorgan, or a receiver appointed by the State Court, to directly contact all such clients and send all invoices and other information necessary to direct the payment of such amounts as may be due to M&F directly into a designated account at JPMorgan, to be applied against the M&F obligations in connection with the Letter of Credit; and

    v. identify and segregate for the benefit of JPMorgan all M&F assets which constitute JPMorgan's collateral, including general intangibles, all partner capital accounts, accounts and accounts receivable due as of February 1, 2009 or to become due thereafter with respect to matters for which M&F was engaged prior to February 2009; and all personal property and equipment licensed to Locke Lord.

c. The appointment of a receiver pursuant to N.Y.C.P.L.R. §§ 6401 *et. seq.,* to take control over the books, records and assets of M&F during the pendency of the State Court proceeding, including without limitation continuing efforts to collect Accounts Receivable for the benefit of JPMorgan.

5

NYC/431493.1

21. Pursuant to an order of the State Court, dated March 13, 2009, JPMorgan's motion for a temporary restraining order and the appointment of a receiver was granted.

22. Prior to the appointment of the receiver, the Debtor commenced this bankruptcy case.

23. The Debtor's Chapter 11 petition reflected that there are billed and unbilled accounts receivable due from clients of M&F in the amount of approximately $5.8 million (the "Pre-Petition Accounts Receivable").

24. As of the date hereof, there is a balance of $301,300.41 (the "Deposits") in pre-petition deposit accounts maintained by M&F with JPMorgan, which Deposits constitute the proceeds of Pre-Petition Accounts Receivable.

25. In anticipation of the Trustee and JPMorgan entering into a stipulation and order substantially in the form of this Stipulation and Order, JPMorgan agreed (i) that the Trustee may continue to collect Pre-Petition Accounts Receivable and proceeds and products thereof and protect and preserve the Collateral and proceeds and products thereof (the "Future Collections"), subject to the claims and security interests of JPMorgan and subject to the terms and conditions of a stipulation and order ultimately approved by this Court; and (ii) to provide the Trustee with documents and information to permit the Trustee to conduct an investigation into the validity, extent, priority and amount of JPMorgan's pre-petition claims (the "Investigation").

26. As of April 15, 2009 the Trustee was holding the sum of $596,802.09, which funds constitute the proceeds of Pre-Petition Accounts Receivable (the "Collections").

27. The Trustee has taken possession, custody and control of, or is in the process of taking possession, custody and control of various books, records, client files and other property of M&F (the "Property").

28. The Pre-Petition Accounts Receivable, the Deposits, the Collections, the Future Collections and the Property (including intangible property and intellectual property) constitute the Collateral of JPMorgan under the Existing Agreements; provided however, that JPMorgan has agreed that the Collateral excludes commercial tort claims and fixtures as defined in the New York Uniform Commercial Code.

29. Following the Investigation, the Trustee now desires to use a portion of the Collateral, which constitutes Cash Collateral, as such term is defined in section 363 of the Bankruptcy Code ("Cash Collateral"), subject to the terms of this Stipulation and Order, to fund the prosecution and administration of this Bankruptcy Case.

30. JPMorgan, in its capacity as the senior secured creditor with respect to the Collateral and Cash Collateral, hereby consents to grant the Trustee an allowance for the use of the Collateral and Cash Collateral subject to the terms and conditions of this Stipulation as approved by the Bankruptcy Court.

IT IS HEREBY STIPULATED AND AGREED, that:

1. This Court has core jurisdiction over this Case, this Stipulation, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 11 U.S.C. §§ 1408 and 1409.

2. Under the circumstances, the notice given by the Trustee of this Stipulation constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b).

3. Each of the "Whereas Clauses" set forth above is incorporated and adopted herein as if fully set forth.

4. As of the Petition Date, the Debtor was indebted and liable to JPMorgan, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $3,220,391.31

in respect of the Letter of Credit issued pursuant to, and in accordance with the terms of Existing Agreements, plus interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), (collectively, the "Pre-Petition Debt"), (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the Pre-Petition Debt, the Set Off, or the obligations under the Existing Agreements are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the there are no claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against JPMorgan or its agents, officers, directors, employees and attorneys.

5. The liens and security interests granted to JPMorgan in the Collateral pursuant to and in connection with the Existing Agreements are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the property described in the Existing Agreements; provided however, the Pre-Petition Collateral (as defined herein) shall not include "fixtures" and "commercial tort claims" of the Debtor, as such terms are defined in the Uniform Commercial Code (the "Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to the Allowance(as defined below).

6. The Set Off taken by JPMorgan pursuant to and in connection with the Existing Agreements and applicable law, is valid and not subject to avoidance, recapture, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

7. In consideration for JPMorgan's consent to the Trustee's use of JPMorgan's Cash Collateral, subject to the terms and conditions hereof and solely to the extent of any diminution in the value of the Pre-Petition Collateral from and after the Petition Date, the Trustee hereby pledges, assigns and grants to JPMorgan, effective on the Petition Date, (i) a full and complete replacement lien and security interest in all of the Debtor's now existing and hereafter acquired receipts, revenues, cash, deposit accounts, earnings on investments, accounts receivable, accounts, chattel paper, contract rights, inventory, general intangibles, machinery, equipment, furnishings, fittings, accessories, special tools, special furniture, vehicles and other tangible and intangible property in which the Debtor now has or may hereafter acquire an interest and in all proceeds and products thereof, together with insurance proceeds, hereafter acquired accounts and in all books and records related thereto and all proceeds thereof, subject and subordinate only to (x) the Allowance as described below and (y) the liens and security interests of JPMorgan in the Prepetition Collateral; (ii) a lien and security interest in all of Debtor's fixtures and commercial tort claims (each as defined in the New York Uniform Commercial Code) and all proceeds and products thereof, subject and subordinate only to (x) the Allowance as defined below; (y) any valid and perfected liens and security interests in such fixtures and commercial tort claims as of the Petition Date; and (z) in addition to the Allowance, the outstanding and unpaid fees and expenses of the professionals representing the Trustee, to the extent awarded or allowed by order of this Court, in accordance with Sections 330 and 331 of the Bankruptcy Code, in connection with services rendered after the Petition Date, in an amount not to exceed the aggregate amount of $150,000 ((i) and (ii) above, collectively, the " Post-Petition Replacement Collateral") to the fullest extent allowable under section 552 of the Bankruptcy Code; provided however that

9

the Post Petition Collateral shall not include a lien or claim upon claims or causes of action which arise under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

8. This Stipulation and Order shall be deemed to be a Security Agreement for purposes of establishing JPMorgan's replacement lien and security interest in the Post-Petition Replacement Collateral. It is expressly agreed, however, that execution or filing of such documents shall not be required to establish or perfect the security interests granted herein. All of the security interests and liens in the Post-Petition Replacement Collateral are hereby deemed to be effective and perfected on and after the Petition Date and shall continue in full force and effect and shall survive the termination of this Stipulation and Order. JPMorgan may, but shall not be required to, file any Uniform Commercial Code Financing Statements in any jurisdiction or take any other or further action to validate or perfect the security interests and liens granted to it pursuant to and in accordance with this Stipulation and Order. The Trustee irrevocably grants to JPMorgan the power of attorney to execute, on behalf of the Trustee, all financing statements, continuation statements, amendments, and any other instruments and/or documents relating to the use of Cash Collateral, and/or the security interests and liens granted hereunder desired by JPMorgan for the perfection of the security interests and liens granted hereunder and the Trustee agrees to a lifting of the automatic stay to carry out the purposes of this paragraph. Furthermore, the Trustee irrevocably authorizes filing of a carbon, photographic or reproduction of this Stipulation and Order as a financing statement and/or mortgage, and agrees that such filing is sufficient as a financing statement and/or mortgage, subject to applicable state law. In the event that such power of attorney is not sufficient for JPMorgan to perfect the liens and security interests granted pursuant to this Stipulation and Order, the Trustee shall promptly execute such additional documents, including security agreements, financing statements and other documents

as may be reasonably requested to be executed or filed to establish or perfect JPMorgan's security interest in the Post-Petition Replacement Collateral.

9. During the term of this Stipulation and Order, as additional adequate protection of JPMorgan's interest in the Collateral and the Cash Collateral (collectively, the "Adequate Protection Obligations"):

(a) The automatic stay is hereby lifted and vacated to permit JPMorgan to irrevocably set off and apply the Deposits, pursuant to the Existing Agreements, applicable state law and Bankruptcy Code §553, free and clear of any claim or charge arising under sections 503(b), 506(c), 507(a) and (b) or otherwise under the Bankruptcy Code, against the Pre-Petition Debt, first to reduce fees, costs and expenses (including attorneys' fees) and then to reduce the principal amount of the Pre-Petition Debt;

(b) The Trustee shall immediately deliver to JPMorgan the difference between the Collections and $250,000.00 (which amount shall not be less than $346,802 based upon the balance of the Collections as of April 15, 2009)**,** free and clear of any claim or charge arising under sections 503(b), 506(c), 507(a) and (b) or otherwise under the Bankruptcy Code, from the Collections as of the date that this Stipulation and Order is approved which amount shall be irrevocably applied first to reduce fees, costs and expenses (including reasonable attorneys' fees as reflected in summary invoices provided to the Trustee) and then to reduce the principal amount of the Pre-Petition Debt ;

(c) The Trustee shall preserve and protect for the benefit of JPMorgan and the estate, the Collateral, including, without limitation, the client files and records of the Debtor and shall not release such files and record to or on the instructions of any clients of the Debtor unless and until all outstanding accounts receivable are paid in full by such client;

(d) The Trustee shall immediately take all actions necessary to bill and collect payment of all billed and unbilled Pre-Petition Accounts Receivable and all product and proceeds thereof, including without limitation all collections of accounts receivable by Locke Lord with respect to pre-petition client matters transferred by M&F to Locke Lord.

(e) The Trustee shall retain Receivable Management Services ("RMS") as the collection and billing agent for the Trustee, upon such terms as may be approved by the Court, provided that the terms that the fees of RMS shall be paid based upon a contingency fee arrangement and shall not exceed 15% of actual collections.

(f) The Trustee shall deliver to JPMorgan 85% of Future Collections, net of the costs of collection paid to the collection agent retained by the Trustee, free and clear of any claim or charge arising under sections 503(b), 506(c), 507(a) and (b) or otherwise under the Bankruptcy Code, which amounts shall be irrevocably applied first to reduce fees, costs and expenses (including reasonable attorneys' fees as reflected in summary invoices provided to the Trustee) and then to reduce the principal amount of the Pre-Petition Debt; and

(g) The Trustee shall provide JPMorgan with such information regarding the Collateral as may be reasonably requested and the Trustee and JPMorgan shall cooperate with one another to the extent reasonable and practicable in connection with the prosecution of claims to realize upon the Collateral;

10. Execution of this Stipulation and Order by JPMorgan shall not constitute an admission that the protection afforded for the use of Cash Collateral hereunder is adequate. Should the Post-Petition Replacement Collateral be inadequate to fully secure diminution in the amount of the Cash Collateral which existed as of the Petition Date, as a result of the Trustee's use hereunder, pursuant to: (a) this Stipulation and Order, (b) any subsequent stipulation

between the parties hereto or (c) any other action permitted by the Bankruptcy Court, then JPMorgan shall have an allowed claim, subject and subordinate only to the Allowance as described below, for such deficiency with priority over every other allowable priority claim entitled to distribution under sections 326, 330, 503(b), 506(c) and 507(a) and (b) of the Bankruptcy Code in accordance with and to the extent provided in Section 507(b) of the Bankruptcy Code.

11. JPMorgan and the Trustee covenant and agree to the following use of JPMorgan's Cash Collateral (the "Allowance") as follows:

(a) Up to the first $150,000 of the Collections remaining with the Trustee pursuant to this Stipulation and Order may be used to pay (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) the fees and expenses of professionals and other persons retained by the Trustee, to the extent allowed by order of this Court; and (iii) commissions and expenses of the Trustee to the extent allowed pursuant to order of this Court;

(b) Up to the next $100,000 of the Collections remaining with the Trustee pursuant to this Stipulation and Order may be used to pay (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (ii) the fees and expenses of professionals and other persons retained by the Trustee to the extent allowed by order of this Court; and (iii) commissions and expenses of the Trustee to the extent allowed pursuant to order of this Court; provided however that items (ii) and (iii) herein may be paid only after the Pre-Petition Debt of JPMorgan is reduced to $2.250 million or less;

(c) After the Collections remaining with the Trustee pursuant to this Stipulation and Order are exhausted pursuant to the provisions of paragraphs (a) and (b) above,

the Trustee may use the 15% of Future Collections, net of the costs of collection paid to the collection agent retained by the Trustee, retained pursuant to this Stipulation and Order to pay (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) the fees and expenses of professionals retained by the Trustee to the extent allowed by order of this Court; and (iii) commissions and expenses of the Trustee to the extent allowed pursuant to order of this Court.

(d) To the extent the amounts described in (a), (b) and (c) above are not required to pay the fees and expenses described herein and to the extent that there are amounts owing to JPMorgan on the Pre-Petition Debt, such funds shall be delivered to JPMorgan and shall be irrevocably applied first to reduce fees, costs and expenses (including attorneys' fees) and then to reduce the principal amount of the Pre-Petition Debt.

12. The liens and security interests granted hereby in the Post-Petition Replacement Collateral shall secure the amount of the diminution, if any, in the Cash Collateral which existed as of the Petition Date as a result of Trustee's use of such Cash Collateral during these proceedings.

13. The terms of the use of Cash Collateral are fair and reasonable, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties and constitute reasonably equivalent value and fair consideration.

14. This Stipulation and Order has been negotiated in good faith and at arm's length between the Trustee and JPMorgan.

15. Absent the relief sought by this Stipulation and Order, the Trustee will not have sufficient funds to administer the Debtor's estate and creditors will be immediately and

irreparably harmed. The use of Cash Collateral in accordance with this Stipulation and Order is therefore in the best interests of the estate.

16. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, commissions, expenses, reimbursement or compensation of the Trustee or any professional retained in this case.

17. Except to the extent of the Allowance, no expenses of administration of the Case or any future proceeding that may result therefrom, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of JPMorgan and no such consent shall be implied from any other action, inaction, or acquiescence by JPMorgan.

18. Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of JPMorgan. However, JPMorgan may request further or different adequate protection, and the Trustee or any other party may contest any such request.

19. No claim or lien having a priority superior to or *pari passu* with those granted by this Stipulation and Order to JPMorgan, shall be granted or allowed while any portion of the Pre-Petition Debt or any Adequate Protection Obligations remain outstanding, and the liens and claims granted hereunder shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

20. If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Stipulation and Order and the liens and claims granted to JPMorgan pursuant to this Stipulation and Order shall continue in full force and effect and shall maintain their priorities as provided in this Stipulation and Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such claims and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to above.

21. If any or all of the provisions of this Stipulation and Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by JPMorgan of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to any Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or Adequate Protection Obligations incurred by the Trustee to JPMorgan prior to the actual receipt of written notice by JPMorgan of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Stipulation and Order and JPMorgan shall be entitled to all the rights, remedies, privileges and benefits granted in this Stipulation and Order with respect to all uses of Cash Collateral.

22. Except as expressly provided in this Stipulation and Order the claims and all other rights and remedies of JPMorgan granted by the provisions of this Stipulation and Order shall

survive, and shall not be modified, impaired or discharged by the entry of an order dismissing the Case, or in any plan or order approved by this Court, or in any subsequent or superseding bankruptcy case of the Debtors.

23. Notwithstanding anything herein or in any other order by this Court to the contrary, and except for the payment of fees and expenses incurred by counsel for the Trustee in connection with the Investigation (to the extent allowed by Order of this Court), no Cash Collateral, Collateral or the Allowance may be used (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due to JPMorgan, or to the liens or claims granted under this Stipulation and Order, (b) to assert any claims or defenses or causes of action against JPMorgan or its agents, affiliates, representatives, attorneys or advisors, (c) contrary to the terms and agreements set forth in this Stipulation and Order, (d) to seek to modify any of the rights granted to JPMorgan hereunder, or (e) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court.

24. The provisions of this Stipulation and Order, including all findings herein, shall be binding upon all parties in interest in this Case, including, without limitation, the Trustee and any successor or assign of the Trustee, any Committee appointed in this Case, and the Debtor and their successors and assigns and shall inure to the benefit of JPMorgan and the Trustee and their respective successors and assigns.

25. This Stipulation and Order is not intended nor shall it be construed as a waiver by JPMorgan of any rights or remedies under the Bankruptcy Code or other applicable laws which JPMorgan may have, including, without limitation, the right of JPMorgan to request relief from the

automatic stay under Section 362(a) of the Bankruptcy Code upon certification to the Bankruptcy Court of a breach of this Stipulation and Order.

26. The parties agree and acknowledge that this Stipulation and Order is entered into without prejudice to: (a) JPMorgan's right to refuse any further requests from the Trustee pertaining to, the use of Cash Collateral; or (b) the Trustee's right to request use of Cash Collateral in addition to that provided for herein without JPMorgan's consent.

27. All communications required or permitted by this Stipulation and Order shall be in writing and delivered as follows:

>Jay Teitelbaum, Esq.
>Teitelbaum & Baskin, LLP
>Attorneys for JPMorgan Chase Bank, N.A.
>3 Barker Avenue
>White Plains, New York 10601
>Tel.: 914.437.7670
>Email: jteitelbaum @tblawllp.com
>
>
>Schuyler Carroll, Esq.
>Arent Fox LLP
>Attorneys for the Chapter 7 Trustee
>1675 Broadway
>New York, NY 10019-5820
>Tel.: 212-484-3955
>Email: carroll.schuyler@arentfox.com

28. This Stipulation and Order may be executed in two or more counterparts, each of which shall be deemed an original, any party may become a party hereto by executing a counterpart, but all of such counterparts taken together shall constitute one and the same instrument. Facsimile or email signatures shall be deemed original signatures.

Dated: April 20, 2009

JPMorgan Chase Bank, N.A.

By: /s/ Jane Orndahl
Jane Orndahl, Vice President
270 Park Avenue
32nd Floor/Mailcode NY1-K425
New York, New York 10017

/s/ Roy Babitt
Roy Babitt, Chapter 7 Trustee


So Ordered this <u>4th</u> day of May, 2009

/s/Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE