WINDELS MARX LANE & MITTENDORF, LLP  Hearing Date September 28, 2010 at 10:00 a.m.
*Successor Attorneys for Roy Babitt, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
(212) 237-1000

Attorneys appearing:  Alan Nisselson (anisselson@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| Morgan & Finnegan L.L.P., | Chapter 7 |
| Debtor. | Case No. 09-11203 (RDD) |

**THE TRUSTEE'S OBJECTION TO THE "FIRST AND FINAL" APPLICATION FOR COMPENSATION FILED BY FORMER COUNSEL ARENT FOX LLP**

Roy Babitt, chapter 7 Trustee of Morgan & Finnegan L.L.P. ("M&F" or the "Debtor"), submits through successor counsel Windels Marx Lane & Mittendorf, LLP this Objection to the "First and Final" application for compensation filed by predecessor counsel Arent Fox LLP ("Arent Fox").

**PRELIMINARY STATEMENT**

Arent Fox seeks too much compensation, too soon in this case. The firm asks for $700,000 in fees for less than a year-and-a half of work on a chapter 7 case when (i) only one adversary proceeding to collect an account receivable has been commenced; (ii) all the significant legal work regarding substantial but difficult claims remains to be done; (iii) the Estate has only $1.2 million on hand; and (iv) what they ask for far exceeds the carve out for all retained professionals. Indeed, as recognized by Arent Fox in its application, see paragraphs 22-25, almost all of the heavy lifting in legal work still needs to be done. What is more, payment of any compensation to be awarded to Arent Fox should be deferred until Arent Fox fulfills its

obligations to ensure an orderly transition of this case. For these reasons, Arent Fox's application should be denied without prejudice.

## THE OBJECTION

### A. *The Estate Does Not Have Much Money on Hand.*

1. Arent Fox states that "[t]he Trustee's account has more than $1,150,000 on deposit." See Arent Fox's Application (AFa), **&**12 n. 2. The actual number is about $1.2 million.

2. The firm mentions that "approximately $575,000 more [is] scheduled to be paid as a result of settlements and installment payments." Id. This is from one settlement with G.A.P. Adventures ("G.A.P."), and the installment schedule requires $100,000-$145,000 payments every three months. The Estate will not receive full payment until October 10, 2011. See G.A.P. Settlement and Release, attached as Ex. A , **&**1.

3. The amount of funds on hand is insignificant when compared to claims filed in the case. Creditors have asserted secured claims in the amount of $4,935,049.23, priority claims in the amount of $2,722,687.26, unsecured claims of $3,318,833.88 and unclassified claims of $2,808,402.67. Claims in the case total $13,784,973.04. These figures do not include administrative expense claims.

### B. *The Requested Fee Far Exceeds the Carve Out.*

4. The carve out worked out with secured creditor JPMorgan Chase Bank. N.A. ("Chase") is not for Arent Fox alone: it covers "(i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United State Trustee ...; (ii) the fees and expenses of [all] professionals and other persons retained by the Trustee, to the extent allowed by order of this Court; and (iii) commissions and expenses of the Trustee to the extent allowed pursuant to order of this Court." See Chase Stipulation and Order, attached as Ex. B, **&**11.

5. Arent Fox simply states that the carve out under the Chase Stipulation and Order is $250,000 plus 15% of collections. See AFa, **&**18(e). There is more to it than that: $100,000 of the $250,000 can be paid "only after the Pre-Petition Debt of [Chase] is reduced to $2,250 million or less"; and the 15% is on defined "Future Collections" -- not all collections -- and is net of the 15% or 30% charged by the recovery agent retained by the Estate. See Ex. B at **&**11(b), (c).

6. Arent Fox points out that the secured creditor separately agreed that "30% of the G.A.P. settlement would go to the Debtor's Estate." AFa, **&**21(e)(iii)(4).

7. The Trustee calculates that the carve out is about $450,000 based on the cash at hand, well below the $700,000 fee sought by Arent Fox. The requested fee exceeds the carve out thus far even if one factors in the payments the Estate will receive on the G.A.P. settlement over the course of the next year.

8. Arent Fox's application is especially striking because it would leave <u>no</u> money to pay compensation to its client, the Trustee, successor counsel and the other professionals who work on behalf of the Estate. To cite just one example, the Trustee has earned commissions of at least $77,848, but to date but has received no compensation.

### C. *Arent Fox Acknowledges That There is a Significant Amount of Unfinished Legal Work.*

9. Beyond the unfairness of Arent Fox being paid all of the carve out if its application is granted, there will be insufficient funds available to the Estate necessary to compensate for all the significant trustee, legal and accounting work which remains to be done. Without these professional services there appears to be little likelihood for a distribution to creditors.

10. The firm concedes in its application that there are numerous open items and other

potential causes of action. Notably, these include:

- resolving "two significant issues with respect to the drawdown" on the Letter of Credit Chase issued to M&F's former landlord Brookfield Properties LP ("BPL"), namely whether the drawdown was proper since M&F "never defaulted under the lease" and BPL "immediately re-let the space to ... Locke Lord Bissell & Lidell LLP ("Locke Lord")," the firm that hired many of the M&F partners after the bankruptcy (AFa, &22(e));

- following up on a form complaint and demand letter sent to BPL, and "reviewing and assessing" related "defenses and claims" (AFa, &22(f));

- researching or developing potential claims against M&F's former partners, Locke Lord and other firms on theories such as successor liability, *de facto* merger or "return of capital"/"capital call" (AFa, &23); and

- determining whether the Estate can pursue clients who "received what appear to be unconventional fee agreements, including, without limitation, discounted invoices and forgiveness of fees, none of which appear to have been authorized under the Debtor's partnership agreement" (AFa, &25).

11. This work, along with other matters that will surely arise, will require the Estate to incur substantial additional legal fees for which there will be no money if the Court grants Arent Fox's application.

### D. Any Compensation to Arent Fox Should be Conditioned on its Cooperation With Successor Counsel on the Transition.

12. Successor counsel has met once with Arent Fox about this case, and the main topic of discussion was this fee application. Unfortunately, that meeting and subsequent conversations did not result in a resolution of the Trustee's concerns regarding Arent Fox's application as stated herein.

13. The meetings and conversations did, however, confirm that there are numerous open matters including potential avoidance actions which have a commencement deadline in the

near future.

14. Successor Counsel has identified specific issues it would like to discuss with Arent Fox and provided it with numerous dates in the next several weeks when we are available to meet. Arent Fox has yet to respond to these requests. While the Trustee recognizes that the Arent Fox lawyers have no doubt busy schedules, it is critical to the Estate that Arent Fox fully cooperate and do so in a timely manner.

15. Accordingly, the Trustee respectfully recommends that if the Court is inclined to award compensation to Arent Fox at this time it do so on an interim basis subject to the guidelines set forth below, and any such award be conditioned upon Arent Fox's full cooperation with Successor Counsel.

16. Even in determining whether an interim fee award is appropriate, the court should consider factors we have already touched upon in this objection, such as "the current availability of funds, the existence of other accrued administrative obligations of the same or higher priority that may deplete funds, [and] the continuing need for funds to pay necessary expenses in the future…." In re Kohl, 421 B.R. 115, 129 (Bankr. S.D.N.Y. 2009).

17. The facts here may militate against any award at all. See In re Soltan, 234 B.R. 260, 280-81 (Bankr. E.D.N.Y. 1999) (court found application for interim fees premature where estate was administratively insolvent and "too many factors remain[ed] to be fixed"). Surely a final award like the one requested here by Arent Fox is wholly inappropriate at this time.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court deny Arent Fox's application and grant such other and further relief as is just and proper.

Dated: New York, New York
September 23, 2010

WINDELS MARX LANE & MITTENDORF LLP


By: */s/ Alan Nisselson*
Alan Nisselson (anisselson@windelsmarx.com)
156 West 56th Street
New York, New York 10019
(212) 237-1000

Successor Attorneys for Roy Babitt, Chapter 7 Trustee of Morgan & Finnegan L.L.P.